# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JOSHUA GEHDE,

                    **Plaintiff,**

v.                                                    **Case No. 19-CV-389**

DR. JEFFREY MANLOVE, *et al.*,

                    **Defendants.**

## DECISION AND ORDER ON DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Plaintiff Joshua Gehde, brings this lawsuit under 42 U.S.C. § 1983 alleging that the defendants violated his rights under the Eight Amendment by acting with deliberate indifference to his medical needs in regard to his treatment and pain management to his shoulder injuries. (ECF No. 1.) The defendants filed a motion for summary judgment (ECF No. 24.) For the reasons stated below, the defendants' motion for summary judgment is granted.

## FACTS

*Preliminary Matters*

In their reply brief, the defendants note that Gehde's response materials are deficient. Specifically, the defendants state that Gehde failed to file any responses to the defendants' proposed findings of fact or his own proposed findings of fact as required by Civil Local Rule 56(b)(2)(B) with his response to their summary judgment motion. In response to the defendants' reply, Gehde filed a motion for extension of time to file a response to "Civil

L.R. 56 (B)(2)(B)." The court granted the motion allowing Gehde to supplement his response materials pursuant to Civil L.R. 56(b)(2)(B). Gehde subsequently submitted proposed findings of fact in accordance with Civil L.R. 56(b)(2)(B)(ii). However, he did not submit a response to the defendants' proposed findings of fact in accordance with Civil L.R. 56(b)(2)(B)(i). As such, to the extent that Gehde's own proposed findings of fact do not dispute the assertions made by the defendants in their proposed findings of fact, the court will deem the defendants' assertions as undisputed. *See* Civil L.R. 56(b)(4).

Also, in supporting his own proposed findings of fact, to the extent that Gehde's response materials cite only to Exhibit 2000 (ECF No. 36-1) and do not include the page numbers or another reference that narrows down the citation, the court will disregard those findings of fact. *See* Fed. R. Civ. P. 56(e). Exhibit 2000 is a 25-page chart that appears to reference the exhibits and medical records submitted by the defendants in support of their summary judgment motion. However, it is unclear to the court the purpose of the chart. Perhaps Gehde meant it as a short-cut to prevent having to cite to those exhibits and medical records to support the findings of fact. Yet, it fails as a short-cut. The use of the chart merely muddles the record, and simply citing the chart as a whole makes it nearly impossible for the court to determine what piece of the record Gehde intended to cite for his propositions. Judges are not "like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). In other words, it is not the job of the court to dig through the record to find evidence to support a party's claim. *Davis v. Carter*, 452 F.3d 686, 692 (7th Cir. 2006). Indeed, it is "[a]n advocate's job . . .to make it easy for the court to rule in [her] client's favor." *Dal Pozzo v. Basic Machinery Co.*, 463 F.3d 609, 613 (7th Cir. 2006).

Finally, there are several instances within Gehde's proposed findings of fact where the fact is supported by his lawyer's affidavit, and the lawyer's affidavit does not cite any underlying evidence to support the fact. The court will also disregard those facts. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.")

### The Parties

During the relevant time period, Joshua Gehde was incarcerated at Waupun Correctional Institution. (ECF No. 26, ¶ 1.) Defendant Dr. Jeffrey Manlove was a physician at Waupun from January 2013 until his retirement on June 3, 2020. (*Id.*, ¶ 2.) Defendant Chrystal Meli (f/k/a Chrystal Marchant) was a Nursing Supervisor/Health Services Manager at Waupun from December 11, 2016 until her retirement on September 25, 2020. (*Id.*, ¶ 3.) Defendant Jason Sonntag was a Correctional Sergeant at Waupun from January 2018 to present. (*Id.*, ¶ 4.)

Gehde was allowed to proceed on an Eighth Amendment deliberate indifference claim against Sonntag for failing to contact the Health Services Unit (HSU) on January 7, 2019 despite Gehde informing him he was in pain. (ECF No. 9 at 5.) He was allowed to proceed on an Eighth Amendment deliberate indifference claim against Dr. Manlove and Marchant for failing to effectively treat his pain for his shoulder injury and for failing to obtain shoulder surgery for him in a timely fashion. (*Id.*)

### Facts Related to the Events of January 7, 2019

On January 4, 2019, Gehde dislocated his shoulder while playing basketball. (ECF No. 44, ¶ 9.) Dr. Manlove referred him to a hospital emergency room for treatment. (*Id.*) Gehde's shoulder was corrected at the emergency room and the emergency room doctor

3

recommended an immobilizing sling, ice, acetaminophen or ibuprofen for pain, and to refrain from sports. (*Id.*) Gehde has a long history of should dislocation and tears and given his history, the emergency room doctor also recommended that Gehde see an orthopedic specialist to discuss preventative surgery. (*Id.*) It is undisputed that on January 7, 2019, Dr. Manlove referred Gehde to an orthopedic specialist. (*Id.*, ¶ 10.)

Also on January 7, 2019, Gehde states he spoke with Sonntag and told him he was in a lot of pain. (*Id.*, ¶ 52.) According to Gehde, Sonntag responded that being in pain was not a reason to immediately go to the HSU and had him fill out an HSR. (*Id.*) Gehde also asserts that Sonntag asked him if he "was a little girl on his period" and told him that he would not get high off of ibuprofen or Tylenol. (*Id.*) Gehde then submitted an HSR to be seen in HSU the next day. (ECF No. 26, ¶¶ 78, 95.) Gehde had also submitted HSRs on January 5, 2019, January 10, 2019, January 11, 2019, and January 14, 2019. (ECF No. 44, ¶ 67.) He was seen in the HSU by an unnamed non-defendant nurse on January 14, 2019. (*Id.*)

Sonntag asserts that he does not remember having any conversation with Gehde about his shoulder or his pain on January 7, 2019. (ECF No. 44, ¶ 52.) Sonntag also states that unless an inmate's health issue is a clear emergency, such as an inmate who is bleeding or unresponsive, an inmate is directed to fill out a health services request form (HSR). (ECF No. 26, ¶ 14.) The HSRs are then collected by HSU staff who triage the requests to determine the appropriate response—whether it is to have the inmate seen immediately by a nurse, schedule an HSU appointment, or refer the HSR to a more appropriate department. (*Id.*, ¶¶ 14, 22–23.)

*Facts Related to Dr. Manlove's and Marchant's Alleged Failure to Provide Pain Medication*

Gehde states in his response brief that "from February 2018 through July 2020, Mr. Gehde was in severe pain and contacted HSU at least 55 times with the common response being that an appointment was scheduled, but no major changed [*sic*] were made to alleviate his pain." (ECF No. 36 at 5.) Gehde then cites to his lawyer's affidavit at "p.21" and his own affidavit at "p.14". (*Id.*) The cite to his own affidavit does not appear to have anything to do with his assertion that he contacted HSU at least 55 times. The cite to the lawyer's affidavit does appear to detail each of the 55 times Gehde contacts HSU but does not contain any cite to the record supporting the lawyer's assertion. In the proposed findings of fact that the court allowed Gehde to file late, he appears to correct his cite to his own affidavit and provides a list of dates when he asserts that he contacted HSU but does not provide any additional details such as who examined him and what treatment, if any, was provided. (ECF No. 44, ¶ 106.)

The defendants states that Marchant had limited authority to provide treatment to manage pain. (ECF No. 26, ¶28). Specifically, she was limited to providing "ice therapy, activity restriction, extra pillow, ace wrap, ibuprofen, Tylenol, muscle rub, and education on PRICE measures (protect, rest, ice, compression, elevation)." (*Id.*) Also, Marchant did not directly treat Gehde's shoulder pain. (*Id.*, ¶ 26.) Instead, her role was limited to triaging and responding to his HSR requests. (*Id.*, ¶ 78.) Marchant recalls five instances where she was involved with one of Gehde's HSRs:

- On January 5, 2019 when she responded that he was slated to see an orthopedic specialist;

- On January 8, 2019 when non-defendant RN Jensen, in response to Gehde's HSR notifying HSU that Sonntag did not

contact HSU for his pain, informed Gehde that he had a follow-up appointment for the following week and if he needed to be seen sooner to let HSU know;

- On January 11, 2019, when he informed HSU that his pain medications were not working, Marchant responded that he had an appointment on January 14, 2019;

- On March 26, 2019, when Gehde requested an update on a shoulder immobilizer, Marchant responded that it was due to arrive soon and advised him to continue using his sling; and

- On October 30, 2019, when Marchant addressed Gehde's complaint about a recent HSU appointment, noting that he did not complain of numbness or tingling; that he was given ibuprofen for pain; and that she saw surveillance video of him playing basketball even though he had been advised several times not to play.

(ECF No. 26, ¶ 78; ECF No. 32-6 at 14.)

Regarding Dr. Manlove, the defendants state that he regularly addressed Gehde's pain. On January 18, 2019, he prescribed physical therapy and 800 mg of ibuprofen. (ECF No. 26, ¶ 46.) He also scheduled an MRI. (*Id.*) On February 6, 2019, Dr. Manlove added acetaminophen and muscle rub to Gehde's treatment plan. (*Id.*, ¶ 47.) On March 4, 2019, Dr. Manlove sent Gehde to the hospital to correct his shoulder and ordered 25 mg of amitriptyline because Gehde stated that neither ibuprofen nor Tylenol was working. (*Id.*, ¶¶ 48–49.) On May 28, 2019, when Gehde stated that amitriptyline was not working, Dr. Manlove prescribed him duloxetine . (*Id.*, ¶ 50.) On June 20, 2019, Gehde was given a muscle rub. (*Id.*, ¶ 51.) Once Gehde was being regularly treated by the orthopedic specialists, Dr. Manlove's participation in his care was reduced to reviewing and implementing the specialists' recommendations. (*Id.*, ¶¶ 52–56.) Dr. Manlove last saw Gehde on January 30, 2020, where they discussed the possibility of surgery with the outside specialist. (*Id.*, ¶ 56.) Dr. Manlove was in favor of that idea. (*Id.*)

6

*Facts Related to Dr. Manlove's and Marchant's Alleged Failure to Order Shoulder Surgery for Gehde*

After his shoulder dislocation on January 4, 2019, HSU, in response to Gehde's several HSRs, scheduled an appointment with an unnamed nurse on January 14, 2019. (ECF No. 44, ¶ 67.)[1] As a follow-up to that appointment, Dr. Manlove examined Gehde on January 18, 2019. (*Id.*, ¶ 68.) Prior to that appointment, on January 7, 2019, Dr. Manlove had already referred Gehde to an orthopedic specialist. (*Id.*, ¶ 10.) At his January 18, 2019 appointment, Dr. Manlove also ordered an MRI for Gehde's right shoulder. (*Id.*, ¶ 68.)

Dr. Manlove saw Gehde again on February 6, 2019 and "noted that he had a known labral tear in the left shoulder [and] he had prior surgery on the right shoulder for labral tear and he continues to dislocate." (ECF No. 44, ¶ 47.) Dr. Manlove also noted that Gehde was slated to have an MRI on his shoulder and see the orthopedic specialist. (*Id.*) Dr. Manlove then modified his referral for specialist appointments to address his issues with both shoulders; however, until Gehde saw the specialists, Dr. Manlove felt there was not much more he could do. (*Id.*)

Dr. Manlove then saw Gehde on March 4, 2019 because Gehde dislocated his shoulder again while playing basketball. (*Id.*, ¶ 48.) Because Gehde would not let Dr. Manlove fix his dislocated shoulder, Dr. Manlove sent Gehde to the hospital. (*Id.*) He also placed Gehde on activity and work restrictions and set a follow-up appointment for him after he had his MRI and orthopedic consult. (*Id.*)

---

[1] Gehde's version contains more dates and more details about his interactions with Dr. Manlove, however the court only included those appropriately supported by evidence in the record. The court disregarded any fact that was either supported by Exhibit 2000 or Gehde's lawyer's affidavit if the entry in the affidavit was not further supported by evidence in the record.

7

On May 28, 2019, Dr. Manlove saw Gehde again where they discussed the results of his recent MRI. (*Id.*, ¶ 50.) The MRI showed that Gehde had labral tears in his shoulders. (*Id.*) At the time Gehde saw Dr. Manlove, he was already scheduled to see an orthopedic specialist at the University of Wisconsin. Gehde also saw a physical therapist at this appointment and declined formal physical therapy but learned exercises to strengthen his shoulder. (*Id.*, ¶ 50.)

Dr. Manlove saw Gehde again on July 2, 2019 to address recent issues with his right shoulder. (*Id.*, ¶ 52.) At that appointment, Dr. Manlove discontinued the use of duloxetine because Gehde reported it was not helping and set a follow-up appointment. (*Id.*)

Gehde then saw the UW orthopedic specialist on July 25, 2019. (*Id.*, ¶ 53.) On August 6, 2019, Dr. Manlove met with Gehde to discuss the appointment. (*Id.*) However, at that time, Dr. Manlove had not yet received the report from the specialist, so he rescheduled a follow-up. (*Id.*)

Dr. Manlove saw Gehde again on October 9, 2019 to discuss his CT scans. (*Id.*, ¶ 54.) Dr. Manlove had the scans sent to the UW orthopedic specialist and ordered that an appointment with the specialist be set as soon as possible. (*Id.*) Gehde saw the specialist on December 12, 2019. (*Id.,* ¶ 56.)

Dr. Manlove met with Gehde on January 30, 2020 to discuss his December visit to the specialist. (*Id.*) At that appointment, Gehde requested to see Dr. Nelson, of Waupun Memorial Hospital, to discuss the possibility of surgery. (*Id.*) Dr. Manlove agreed and placed an order to schedule Gehde an appointment with Dr. Nelson. (*Id.*) That was the last time Dr. Manlove saw Gehde. (*Id.*, ¶ 57.) In February and March 2020, he was on vacation;

8

then he caught COVID-19 in the middle of March, requiring him to take another three weeks off. (*Id.*) He then retired in June 2020. (*Id.*)

The defendants note that neither Dr. Manlove nor Marchant were responsible for scheduling off-site consultations with specialists and had no control over when patients could be seen by those specialists. (ECF No. 26, ¶¶ 33–34, 74.) At most, Dr. Manlove could make a referral to off-site specialists. (*Id.*, ¶¶ 59, 62–74.) Marchant did not have the ability to make referrals at all. (*Id.*, ¶ 27–28.) Additionally, there is no evidence in the record that Marchant was involved in the decision making process regarding surgery.

*Facts Related to Gehde's Exhaustion of Administrative Remedies*

Gehde filed three inmate complaints related to his case: WCI-2019-1106; WCI-2019-1433; and WCI-2019-2743. (ECF No. 26, ¶ 88.) The complaint examiner's office received WCI-2019-1106 on January 16, 2019, and Gehde complained that he told both Marchant and Dr. Manlove that the pain medication he was prescribed was not adequate. (ECF No. 31-2 at 12.) The relief Gehde specifically asks for is "to be given medication that works for my pain." (*Id.*) Gehde also stated "Dr. Manlove know this is a [*sic*] issue because this isn't the first time this has happened and was told he need surgery." (*Id.*) The complaint examiner investigated Gehde's complaint and recommended dismissal to the reviewing authority because she determined that the issue involved would require her to:

> engage in an evaluation of the quality of care versus the demonstrated need as that discussion lays within the bounds of professional medical discretion. The bottom line here is that inmate Gehde's beliefs and opinions as to his medical needs, though undoubtedly voiced to HSU . . . do not carry the day when measured against the factual statements and evidence provided by HSM Marchant.

9

(*Id.* at 9.) The Reviewing Authority dismissed the complaint noting that Gehde was seen by HSU and given ibuprofen and Tylenol. (*Id.*) Gehde's appeal of the reviewing authority's decision was received by the CCE on February 28, 2019, and the CCE recommended dismissal of the appeal on the grounds that there was no reason to believe the care offered to Gehde was inadequate. (*Id.* at 10.) The office of the Secretary accepted the CCE's recommendation and dismissed the appeal on March 19, 2021. (*Id.*)

The complaint examiner's office received WCI-2019-1433 on January 22, 2019, in which Gehde complained that Sonntag did not call HSU on January 7, 2019 when he told him he was in pain. (ECF No. 31-3 at 8.) The ICE rejected the complaint because after investigating, Sonntag stated he didn't remember Gehde ever asking him to call HSU. (*Id.* at 6.) The ICE also noted that Gehde was seen by HSU on January 14, 2019 so the matter appeared to be resolved. (*Id.*) Gehde appealed the rejection, and the reviewing authority dismissed the appeal because it found that the rejection was appropriate. (*Id.*)

The complaint examiner's office received WCI-2019-2743 on February 8, 2019, wherein Gehde complained that non-defendant Sgt. Beahm did not call HSU for his shoulder pain on January 9, 2019. (ECF No. 31-4 at 6.) The ICE rejected the complaint because it was filed beyond the 14-day deadline. (*Id.* at 2.) Gehde did not appeal the rejection. (ECF No. 26, ¶ 99.)

The defendants state there is no record of Gehde filing inmate complaints regarding the delay in scheduling his surgery. (*Id.*, ¶ 100.) Gehde notes that WCI-2019-1106 "included that surgery was an option in addition to adequate pain medicine." (ECF No. 44, ¶ 54.) The defendants dispute that WCI-2019-1106 was about failing to schedule Gehde for surgery. (*Id.*)

10

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

Gehde alleges that the defendants were deliberately indifferent to his medical needs in three ways: 1) that Sonntag failed to contact HSU on January 7, 2019 despite Gehde informing him twice that day that he was in pain and was asking him to call HSU; 2) that Dr. Manlove and Marchant failed to provide him with continuous effective medication to manage the pain after injuries to his shoulders; and 3) that Dr. Manlove and Marchant refused to order him shoulder surgery in a timely manner, causing him unnecessary suffering and pain. The defendants move for summary judgment on each of these claims.

*1. Claim Against Sonntag*

Gehde claims that Sonntag violated his Eighth Amendment rights when he did not call HSU after Gehde told him he was in pain on January 7, 2019. A prison official violates the Eighth Amendment when he is deliberately indifferent "to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "To state a cause of action, a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

"A medical need is sufficiently serious if the plaintiff's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Roe v. Elyea,* 631 F.3d 843 857 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). The condition does not need to be life-threatening to be serious; it needs only to be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

12

There is a factual dispute about whether Gehde told Sonntag he was in pain on January 7, 2019, but the dispute is immaterial because even when accepting Gehde's version of the events, no reasonable factfinder could conclude that Sonntag was deliberately indifferent. The HSU was already aware that Gehde was experiencing pain. By January 7, Gehde had already submitted two HSRs about this issue. Per prison policy, the HSU determines whether an inmate's circumstances requires immediate attention. This policy creates a division of responsibility between the security staff and the medical staff and "people who stay within their roles . . . cannot be hit with damages under § 1983." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Sonntag, then, was allowed to direct Gehde to fill out an HSR and defer to the discretion of HSU staff in determining how best to accommodate Gehde.

Gehde seems to argue that summary judgment is not appropriate because there is a question of material fact over whether he was experiencing a medical emergency. Even so, it would be immaterial because Gehde has failed to demonstrate that a reasonable factfinder could conclude that he suffered a recoverable harm. "In order to succeed in a § 1983 suit, a plaintiff must 'establish not only that a state actor violated his constitutional rights, but also that the violation caused the plaintiff injury or damages.'" *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019) (quoting *Roe*, 631 F.3d at 864). A plaintiff must "show that he experienced . . .cognizable harm." *Lord v. Beahm,* 952 F.3d 902, 905 (7th Cir. 2020).

Gehde has not shown that he experienced cognizable harm after Sonntag refused to immediately call HSU. There is nothing in the record to suggest that Gehde would have received care different than the care he received when he did see HSU on January 14, 2019.

13

The fact that Gehde had submitted no less than five HSRs by the time he was seen in HSU suggests that HSU had determined that scheduling an appointment for the next available date was the most appropriate course of action.

As for Sonntag's alleged comments about Gehde not being able to handle pain, "most verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment." *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015). Verbal harassment rises to the level of cruel and unusual punishment where it incites psychological pain, such as a guard purposely telling an inmate with a headache that the doctor told him that the inmate had terminal brain cancer. *Lisle v. Welborn*, 933 F.3d 705, 718 (7th Cir. 2019). Generally, though, "[r]elationships between prisoners and prison staff are not always marked by genteel language and good manners" and without evidence that staff is exploiting "an inmate's known psychological vulnerability to cause psychological anguish," verbal harassment does not rise to the level of a constitutional violation. *Id.*

Thus, even when taking the facts in a light most favorable to Gehde, no reasonable factfinder could conclude that Sonntag violated Gehde's Eighth Amendment rights. Summary judgment is granted in Sonntag's favor, and because there are no additional claims against him, he is dismissed from the case.

### 2. *Claim Against Marchant and Dr. Manlove*

Gehde asserts that Marchant and Dr. Manlove violated his Eighth Amendment rights when they failed to effectively treat his shoulder pain. As stated above, it is undisputed that Gehde's shoulder issues are an objectively serious medical issue, so the question is whether Marchant and Dr. Manlove were deliberately indifferent to Gehde's should pain.

To determine if medical professionals were deliberately indifferent in their treatment of pain, a plaintiff must show "that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original). The plaintiff also "must show more than mere evidence of malpractice." *Id*. The plaintiff must show that the prison official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment*." Stallings v. Liping Zhang*, 607 Fed. Appx. 591, 593 (7th Cir. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). One such way to establish whether a medical professional departed from accepted professional standards is where there is evidence that the professional "refused to take instructions from a specialist." *Petties*, 836 F.3d at 729. "Another is when he or she fails to follow existing protocol." *Id.* A further example is where a medical professional "persists in a course of treatment known to be ineffective." *Id.* at 730. Also, where a medical professional "chooses an 'easier and less efficacious treatment' without exercising professional judgment," he or she has departed from acceptable standards. *Id.* Additionally, "an inexplicable delay in treatment which serves no penological purpose" also can amount to deliberate indifference. *Id.*

Regarding Marchant, Gehde failed to provide readily discernable evidence that she was personally involved in treating his shoulder pain.[2] At most, Gehde points to 55 times he contacted HSU regarding his shoulder pain and lists the dates. But he does not provide details of who responded to his requests, how they responded to his requests, and what treatment he was (or was not) provided. Based on Gehde's submitted evidence, the court

---

[2] Perhaps the evidence is buried in Exhibit 2000, but as discussed above, the court is not expected to dig through the record like a truffle pig to ferret out specific examples of when Gehde interacted with Marchant regarding treatment of his shoulder pain.

has no way to determine whether Marchant was involved in any of the 55 times Gehde submitted an HSR about his pain. "Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). "It is therefore incumbent on the party opposing a summary judgment motion to 'inform the district court of the reasons why summary judgment should not be entered'" *Reed v. Brex, Inc.*, 8 F. 4th. 569, 578 (7th Cir. 2021) (quoting *Riely v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018)).

The defendants provided evidence of five times Marchant was involved in Gehde's treatment, and each of these instances show that Marchant's involvement was limited to triaging Gehde's HSR requests and not actually treating Gehde's pain. Even if she was involved in treating Gehde's pain, it is undisputed that Marchant's ability to treat pain was limited to the treatment Gehde was already receiving, but claiming was ineffective—ice, ace wraps, ibuprofen, and Tylenol.

Thus, based on the evidence in the record, no reasonable factfinder could conclude that Marchant knew that Gehde's pain management was not working, yet deliberately disregarded that fact. Summary judgment is granted in her favor on this claim, and she is dismissed from the case.

As for Dr. Manlove, no reasonable factfinder could conclude that his management of Gehde's pain was such a significant departure from acceptable standards that it rose to a level of a constitutional violation. The undisputed facts show that Dr. Manlove tried different combinations of pain medication, escalating from ibuprofen and Tylenol to amitriptyline and duloxetine. He also obtained additional diagnostics like an MRI; referred

16

Gehde to specialists; diligently consulted the specialists' reports and followed their recommendations to the extent he was able to within the institution; provided topical muscle rubs; and ordered physical therapy. This is not a situation where a medical professional resorted "to an easier course of treatment that they know was ineffective." *Petties*, 836 F.3d at 729.

For example, in *Conley v. Birch*, 796 F.3d 742, 747–49 (7th Cir. 2015), the evidence showed that the medical professionals strongly suspected the inmate's hand was fractured but instead of treating the fractured hand, they put him on over-the-counter pain medicine and ice. Unlike the medical professionals in *Conley*, Dr. Manlove was actively treating the shoulder dislocation, using his professional judgment to manage the pain and resolve Gehde's chronic issue the as he saw fit.

In cases such as these, courts should defer to a medical professional's treatment decision "unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles*, 771 F.3d at 409 (quoting S*ain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008)). A "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.* This "standard reflects the reality that there is no single 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

There is no evidence in the record establishing that Dr. Manlove's management of Gehde's pain was so egregious that no minimally competent medical professional would have responded the way he did. At most, the evidence establishes that Gehde did not feel

17

Dr. Manlove's prescribed course of treatment was working, but such "a disagreement about the proper course of treatment . . . is insufficient to overcome summary judgment." *Stallings*, 607 Fed. Appx. at 593. As such, even when taking the facts in a light most favorable to Gehde, no reasonable factfinder could conclude that Dr. Manlove was deliberately indifferent to his shoulder pain. Summary judgment is granted in Dr. Manlove's favor and he is dismissed.

### 3. Claim Against Dr. Manlove and Marchant—Shoulder Surgery

Finally, Gehde asserts that Dr. Manlove and Marchant violated his Eight Amendment rights by delaying the scheduling of his surgery. The defendants argue that this claim should be dismissed on the grounds that Gehde failed to exhaust his administrative remedies. The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court, and it produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94–95 (2006)). The exhaustion rule also promotes efficiency, because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

18

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court." *Id.* "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). An inmate can overcome his failure to exhaust his administrative remedies only where he can demonstrate that the grievance process was unavailable to him. *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). An inmate can show that a grievance process may be unavailable where "(1) prison officials are 'consistently unwilling to provide any relief to aggrieved inmates'; (2) the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use;' or (3) prison administrators take affirmative action to thwart use of the grievance process," but these are "only examples, not a closed list." *Id.* (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859–60 (2016)).

Here, the only inmate complaint that discusses surgery is WCI-2019-1106. However, the primary issue in that complaint is Gehde's concern he was not receiving appropriate pain medication. The regulations state that a complaint "may contain only one clearly identified issue." Wis. Admin. Code § 301.07(5). The Court of Appeals for the Seventh Circuit has noted that this regulation "is not more specific about what it takes to satisfy this requirement." *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020). In that case, "[w]hen the applicable regulations provide little guidance regarding the required contents of a prison administrative complaint, we have held that an inmate's complaint will suffice for exhaustion purposes if it provides notice to the prison of 'the nature of the wrong for which redress is sought.'" *Id.* (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)).

19

While "surgery" appears in WCI-2019-1106, it cannot reasonably be said that it gave Waupun notice of Gehde's accusation that Dr. Manlove and Marchant unnecessarily delayed his scheduled surgery. The subject of the inmate complaint is clearly Gehde's dissatisfaction with the amount and type of pain medicine he was receiving. The type of relief he demands is to be given appropriate pain medication. Considering inmates are prohibited by regulation to submit an inmate complaint addressing two separate issues, and this inmate complaint was not rejected on the basis that it contained more than one issue, WCI-2019-1106 cannot be construed as a complaint about delayed surgery.

There is no additional evidence in the record demonstrating that Waupun was put on notice via the inmate complaint system that Gehde had a grievance regarding the scheduling of his surgery. Accordingly, he did not exhaust his administrative remedies on this claim. Claims filed by an inmate "before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits." *Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Gehde's Eighth Amendment deliberate indifference claim for delaying the scheduling of surgery against Dr. Manlove and Marchant is dismissed.

## CONCLUSION

The defendants' motion for summary judgment is granted and the case is dismissed. Gehde's Eighth Amendment deliberate indifference claim against Sonntag for failing to call HSU when he told Sonntag he was in pain on January 7, 2019 is dismissed on the merits. No reasonable factfinder could conclude that in deferring to the established process, Sonntag was deliberately indifferent. Gehde's Eighth Amendment deliberate indifference claim against Marchant and Dr. Manlove for inadequately treating his shoulder pain is also

20

dismissed on the merits. Gehde failed to present any evidence establishing that Marchant was involved in his pain management, and no reasonable factfinder could conclude that Dr. Manlove's course of treatment was so unacceptable that no minimally competent medical professional would have responded the way he did. Finally, Gehde's Eighth Amendment deliberate indifference claim against Marchant and Dr. Manlove for delaying the scheduling of his shoulder surgery is dismissed on the grounds that Gehde failed to exhaust his administrative remedies. There is no evidence in the record showing that Gehde filed an inmate complaint about the delay in surgery.

Gehde's claim against Marchant and Dr. Manlove for delaying surgery is dismissed without prejudice because it was dismissed on exhaustion grounds. *See Chambers v. Sood,* 959 F.3d 979, 984 (7th Cir. 2020). The remaining claims are dismissed with prejudice. The defendants also argued that they were entitled to qualified immunity. Because the court grants summary judgment on the merits, the court does not need to address the qualified immunity argument.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** the defendants' motion for summary judgment (ECF No. 24) is **GRANTED.**

**IT IS FURTHER ORDERED** that Gehde's claim against Dr. Manlove and Chrystal Marchant for failing to timely schedule shoulder surgery is **DISMISSED without prejudice** on exhaustion grounds.

**IT IS FURTHER ORDERDED** that the remaining claims are **DISMISSED with prejudice** and that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

21

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case

Dated at Milwaukee, Wisconsin this 23rd day of December, 2021.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge

22